**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

| | | |
|---|---|---|
| **PERRY MOORE** | ] | |
| **Plaintiff,** | ] | |
| | ] | **Civil Action No.** |
| | ] | |
| | ] | **1:14-CV-00024-GHD-DAS** |
| | ] | |
| **V.** | ] | |
| | ] | |
| **GULF STATES MANUFACTURERS, LLC** | ] | |
| **Defendant.** | ] | |

---

**MEMORANDUM IN SUPPORT OF MOTION BY U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION TO QUASH AND/OR MODIFY SUBPOENA, AND MOTION TO STRIKE**

---

The U. S. Equal Employment Opportunity Commission (hereinafter, the "Commission" or "EEOC"), by and through its attorneys, has moved this Court, pursuant to Rule 45, Federal Rules of Civil Procedure, to quash the Subpoena to Testify at a Deposition in A Civil Case attached as Exhibit A to the EEOC's Motion to Quash and/or Modify Subpoena filed contemporaneously herewith. Defendant Gulf States Manufacturers, LLC, seeks to depose a Commission employee under the provisions of Rule 45(a) "with regard to Perry Moore, EEOC Charge No. 846-2012-62607." The subpoena is addressed to Eszean McDuffey ("McDuffey"), Supervisory Federal Investigator.

Despite the Commission's good faith effort to resolve this dispute and its previous receipt of all disclosable documents in the aforementioned requested file, Defendant refused to withdraw its subpoena. As explained with greater particularity below, the subpoena is both procedurally and substantively defective. Specifically, the subpoena seeks testimony that is prohibited by EEOC's procedural rules and regulations, is wasteful of public resources, and is protected from

1

disclosure by statute and privilege. On these bases, the EEOC seeks to quash and/or modify this subpoena.

Moreover, Defendant failed to effect personal service on McDuffey as required by applicable rule of federal civil procedure 45(b)(1). Accordingly, the EEOC seeks an order striking Defendant's subpoena under Fed. R. Civ. 12(f).

## MOTION TO STRIKE SUBPOENA

District courts have broad discretion when considering a motion to strike. *See Tracfone Wireless, Inc. v. Access Telecom, Inc.,* 642 F.Supp.2d 1354, 1360 (S.D.Fla.2009). Federal Rule of Civil Procedure 12(f) sets forth the standard for granting a motion to strike, stating in pertinent part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Courts have noted that evidence submitted in support of motions or pleadings may be "challenged by motions to strike because the Federal Rules provide no other means to contest [its] sufficiency." *Anderson v. Ga. Gulf Lake Charles, LLC,* 2:07–CV1378 LEAD, 2008 WL 919716, *1 (W.D.La. Apr. 4, 2008) (citing cases). Based on both this rationale and the concept that a motion to strike evidence may sometimes be treated like a motion in limine, *see, e.g., Moulton v. Desue,* 3:11–CV–382–J– 37JBT, 2012 WL 2865809, *1 n. 2 (M.D.Fla. July 11, 2012); *Moody v. Coliseum Psychiatric Ctr., LLC,* 5:04–CV–364 (DF), 2006 WL 1652281, *4 n. 3 (M.D. Ga. June 12, 2006); *Hiscox Dedicated Corporate Member, Ltd v. Matrix Group Ltd., Inc., 8:09–CV–2465–T–33AEP, 2011 WL 2148088, *3 (M.D. Fla. May 31, 2011*), many courts entertain motions to strike evidence. Under this view, motions to strike evidence may be granted where the evidence that is offered is inadmissible under the Federal Rules of Evidence. *See Pashoian v. GTE Directories,* 208 F.Supp.2d 1293, 1297 (M.D.Fla.2002) (stating a court may strike inadmissible evidence); *see*

*also Alston v. Infirmary Health Hosps., Inc.,* 1:11–CV–550–CG–M, 2012 WL 5045369, \*2 (S.D.Ala. Oct. 18, 2012) (granting motion to strike affidavit attached to motion); 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice and Procedure* § 1383 (3d ed.2012) (inadmissible evidence may be stricken).

In addition to substantive defects outlined below, Defendant's service of the subpoena to McDuffey was procedurally defective. Defendant's deposition subpoena was directed to non-party witness, Eszean McDuffey. On March 9, 2015 Defendant attempted service of its Rule 45 subpoena at the Commission's Local Area Office facility located at the A.H. McCoy Federal Building in Jackson, Mississippi by leaving the subpoena with another employee, an Investigative Support Assistant, at the office.

Rule 45 provides that "[s]erving a subpoena requires delivering a copy to the named person." Fed.R.Civ.P. 45 (b)(1). "Under the plain language of the rule, as well as Fifth Circuit precedent, service is improper if the person himself is not served with a copy of the subpoena." *Seals v. Shell Oil Supply,* No. 12–1983, 2013 WL 3070844, at \*3 (E.D. La. June 17, 2013) (Roby, Mag.) (citation omitted). The Fifth Circuit has found that service of a Rule 45 subpoena on a party's attorney, instead of the party, "renders such service a nullity." *Harrison v. Prather,* 404 F.2d 267, 273 (5th Cir.1968).

The subpoena's service was improper because it was delivered to the wrong Commission employee and not personally to Ms. McDuffey. The fact that Ms. McDuffey is a federal employee does not change the service requirements. Service to an individual federal employee at the employee's business address at the agency is not effective service under the federal rules. *Despain v. Salt Lake Area Metro Unit*, 13 F.3d 1436 (10th Cir. 1994)(rejecting argument that service on the Bureau of Alcohol, Tobacco, Firearms & Explosives was sufficient where

recipients were ATF agents; agents must still be served in compliance with federal rules.)(citing, *Micklus v. Carlson,* 632 F.2d 227, 240 (3d Cir. 1980); *see also Love v. Hayden,* 757 F. Supp. 1209, 1211 (D. Kan. 1991); 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1107 at 163 (1987) (Wright & Miller)). Accordingly, the subpoena should be stricken or quashed in its entirety as it was not properly served.

There is no dispute as to whether Ms. McDuffey was personally served. As such, the Defendant has not met its burden of demonstrating the service of process was effective. Accordingly, the subpoena should be stricken and held for naught.

## MOTION TO QUASH SUBPOENA

### I.  FACTS

#### A.  *The Underlying Charge of Discrimination*

On July 18, 2012, Plaintiff Perry Moore ("Moore," "Charging Party" or "Plaintiff"") filed a charge of discrimination with the Jackson Area Office.  In the Charge, he alleges that Gulf States Manufacturers, LLC ( ""Gulf States," Respondent" or "Defendant") discriminated against him based upon his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, he alleged that on July 9, 2012, he was discharged from his position based on his race, black, because a white male comparator, Billy Murphy, was not similarly disciplined for a like infraction.

Following its initial investigation (not conducted by McDuffey), the Commission issued a Letter of Determination (not signed by McDuffey) which was mailed to Defendant on October 28, 2013.  In the letter, the Commission found based on the evidence submitted by Gulf States and by Perry Moore that a violation of a statute enforced by the Commission (Title VII) had likely occurred when Moore's employment was terminated.  After receipt of the Letter of

Determination, Moore requested a Notice of Right to Sue. A Right to Sue was mailed (not by McDuffey) to both Moore and Respondent on December 20, 2012.

### B. Underlying Court Action

Subsequently, Moore brought this employment discrimination suit on February 13, 2014 against Defendant based upon the conduct alleged in his charge of discrimination. In the complaint, Plaintiff asserts various claims, including racial discrimination under Title VII. With respect to its Title VII claims, Plaintiff alleges Moore was qualified for the position at "the time of his termination," his termination of employment constitutes an adverse employment action, and he was treated less favorably than at least one similarly situated employee of a different race: Billy Murphy. On March 19, 2014, Defendant filed its Answer. In its answer, Defendant generally denied Plaintiff's claims and asserted various affirmative defenses. As to the Title VII claim, Defendant contends that employment decisions about which Plaintiff complains were based on legitimate, non-discriminatory business reasons by his employer and not on discriminatory animus. It appears that the parties have engaged in discovery regarding the allegations of the complaint and of the answer. The most recent docket filing is docket number 99 and the docket includes a number of deposition notices.

On February 14, 2014, before filing its answer and as allowed by applicable federal regulation, Defendant submitted a Freedom of Information Act ("FOIA") request. Defendant requested "a copy of all materials relating to the charges filed by Mr. Perry Moore.[1]" On March 26, 2014, the Commission complied with Defendant's FOIA requests by disclosing unprivileged documents pertaining to Charge No. 846-2012-62607.

### C. Defendant Attempts Service of Two Improper Subpoenas

#### 1. Improper Subpoena to Ms. Ernestine Owens

[1] Mr. Moore also requested a copy of these records through a FOIA request on January 9, 2014.

On December 22, 2014, the EEOC's Birmingham District Office received a subpoena. In the subpoena, Defendant set forth that it intended to seek the testimony of former Senior Federal Investigator, Ernestine Owens.  In response, the Commission sent Defendant a letter on December 23, 2014 outlining associated defects with the subpoena.  First, the Commission advised that Ms. Owens was not currently employed as an Investigator in the Jackson Area Office of the U. S. Equal Employment Opportunity Commission.  The Commission was unable to accept service of process on behalf of the then retired Ms. Owens.  Substantively, the Commission also noted from the text of Defendant's subpoena that it sought to depose Ms. Owens about matters related to what appears to be an EEOC charge.  As a courtesy, the Commission shared the provisions of the deliberative process privilege regarding disclosure of Commission files.   Despite our clear objections, Defendant moved forward with deposing Ms. Owens.[2]

### 2. Improper Subpoena to Ms. Eszean McDuffey

Following Ms. Owens' deposition, Defendant expressed a desire to depose Ms. Eszean McDuffey by sending an email to the Birmingham District Office Regional Attorney on February 3, 2015.[3]  In this communication, Defendant relayed its belief that Ms. McDuffey may have information regarding the events that occurred during the investigation.  Specifically, information concerning "the individual who has the most knowledge of the investigation and the EEOC's decision to issue a For Cause Determination is Ms. Eszean McDuffey, Enforcement Supervisor, in the Jackson Area Office."

---

[2] During the course of the deposition, Ms. Owens advised Defendant that she was not under the employ of the Commission; she did not have a particularized memory of the events that occurred during the course of her investigation, and was not authorized to speak for the Commission. During the deposition, Defendant apparently came to believe that possibly Ms. Eszean McDuffey may have information regarding the events that occurred during the investigation.

[3] Ex. 1 [Email from J. Phillips to C. Smith 2.3.15]

In response, the Commission sent Defendant a letter on February 12, 2015 advising that the Commission objected to the deposition of McDuffey on evidentiary and privilege grounds. [4] As to evidentiary grounds, the Commission advised that Ms. McDuffey did not see or hear any part of the events giving rise to the charge of discrimination. She was employed during the relevant period as an Investigative Supervisor and did supervise, among others, Ms. Ernestine Owens. However, both determinations and dismissals by the Commission are issued by the Area Director after review of the Commission file. As a result, the deposition of McDuffey would not reveal any relevant evidence or information likely to lead to relevant evidence.

On March 9, 2015, the Defendant attempted service of a subpoena upon Ms. McDuffey by leaving the subpoena with another Commission employee at the front desk of the Commission's Jackson Area Office. The subpoena as written commands the testimony of Supervisory Federal Investigator, Eszean McDuffey. There should be no dispute that the subpoena was not delivered to Eszean McDuffey, nor was it delivered to counsel for the Commission. Instead, Defendant left the subpoena with an Investigative Support Assistant for the Commission.

The Defendant continues to remain firm in its stance that Ms. McDuffey's testimony is relevant, and refuses to withdraw its demand for a deposition, necessitating the instant Motion. The Commission has complied with its obligations to confer in good faith to resolve this dispute without the need for Court involvement, but its efforts have been unsuccessful. A Good Faith Certificate, executed by counsel for both Parties, is attached to this Motion as Exhibit C.

## II.  ARGUMENT

### A.  CONSIDERATIONS OF UNDUE DISRUPTION, ANNOYANCE, BURDEN AND HARASSMENT OUTWEIGH ANY POSSIBLE VALUE IN DEPOSING A COMMISSION EMPLOYEE.

_____
[4] Ex. 2 [Letter to J. Phillips from C. Smith 2.12.15]

Retired Magistrate Judge Roper of the Southern District has already ruled with respect to this very issue in the case, *Tanks v. Lockheed Martin Corp.*, 2006 U.S. Dist. LEXIS 47092 (S.D. Miss. July 10, 2006).

In *Tanks,* the Commission filed a Motion to Quash a Subpoena Duces Tecum and ad Testificandum to resist Defendant's attempt to compel the production of documents and testimony from the EEOC concerning underlying charges of discrimination brought by many of the Plaintiffs in the case. The EEOC investigated the charges and issued reasonable cause determinations setting forth that Charging Part[ies] and other black workers were discriminated against because of their race in violation of Title VII of the 1964 Civil Rights Act. As in this case, the EEOC was not party to these actions. Similarly, Plaintiff in *Tanks* sought to use the EEOC's determinations as evidence of Lockheed's misconduct. The Defendants sought discovery in order to challenge the credibility of those determinations. After a Motion to Quash was filed, the Commission converted Plaintiff's request for subpoena duces tecum into a request under the Freedom of Information Act by agreeing to produce documents from the investigative files of the Plaintiff.

In its motion, the Commission argued that a balancing test should be employed before requiring EEOC personnel to be deposed. The Court agreed and granted the Commission's Motion to Quash. Specifically, the Court held, "Balancing the likely disruption to the operations of the agency by requiring deposition testimony against the possibility that the Defendants have already obtained all of the material to which they are entitled, the court holds that deposition testimony will not be required from the EEOC, at least not at this juncture." See *Tanks v. Lockheed Martin Corp.*, 2006 U.S. Dist. LEXIS 47092 (S.D. Miss. July 10, 2006)**.**

Magistrate Roper's recognition of the burden that such depositions would place on agency operations reflects a broader point about the EEOC"s role as the primary federal agency – and in Mississippi – the only government agency – charged with investigating and resolving allegations of workplace discrimination. The importance of this role and its implications for reducing the burden on the federal courts cannot be overstated. The EEOC"s administrative procedures promote "the speedy, informal, *non-judicial* resolution of discrimination claims." *McClinton v. Alabama By-Products Corp.,* 743 F.2d 1483, 1485 (11th Cir. 1984); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1198-99 (5th Cir. 1975)(noting EEOC"s receipt and investigation of charges serves important public interests including "conserving court resources."). By requiring the exhaustion of administrative remedies as a prerequisite to filing suit, Title VII and other civil rights laws allow the EEOC to pursue voluntary compliance and promoting conciliation between the parties before the parties reach the courthouse.

However, Defendant's approach would turn this enforcement scheme on its head. To require. McDuffey or other EEOC employees to make themselves available for deposition or trial in this case would unreasonably interfere with the EEOC'S ability to carry out its congressionally mandated duty to investigate claims of employment discrimination efficiently and effectively. *See In re EEOC,* 709 F.2d 392, 397-98 (5th Cir. 1983). If litigants in such cases could depose EEOC employees as a matter of course, the Commission would be forced to expend substantial resources testifying about old investigations rather than conducting new ones. *Leyh v. Modicon,* 881 F.Supp. 420 (S.D. Ind. 1995).

For example, in Fiscal Year 2014, the EEOC received over 31,073 Title VII charges based on race nationwide.[5] The EEOC resolved 7.5 percent of these charges through settlement, 4.9 percent through voluntary withdrawal by the employee, and another 4.9 percent though administrative closure. Through these efforts, the EEOC recovered over $74.9 million dollars for victims of alleged racial discrimination. These numbers speak not only to the EEOC's success in enforcing Title VII, but also demonstrate the EEOC's critical role in preserving judicial resources by resolving disputes before they reach litigation.

Accordingly, public policy mitigates against compelling the deposition of McDuffey or any other representative of the EEOC. If even half of the parties to the 31,073 total charges filed in Fiscal Year 2014 were allowed to depose EEOC staff, this result would greatly drain the Commission's resources, undermine the EEOC's role in protecting the court from needless judicial involvement as every deposition would include judicial rulings on asserted privileges or other objections. As such, this court should follow the holding of Magistrate Roper in the *Tanks* decision.[6]

### B. REQUIRING TESTIMONY BY ESZEAN MCDUFFEY WOULD BE UNDULY BURDENSOME AND WOULD MAY REQUIRE DISCLOSURE OF PRIVILEGED INFORMATION

#### 1. *SUBPOENAS SHOULD BE QUASHED WHEN THEY ARE UNDULY BURDENSOME*

Federal Rule of Civil Procedure 45(c)(3)(A)(iv) requires that a subpoena be quashed if compliance subjects the subpoenaed individual or organization to undue burden. Defendant seeks to depose a Commission representative regarding facts contained in the administrative file.

---

[5] All statistics on this page can be viewed at, http http://eeoc.gov/eeoc/statistics/enforcement/race.cfm (last visited March 19, 2015).
[6] In its first opposition brief, the Plaintiff cited a ruling in *Jalisha Hill v. Cracker Barrel* as authority permitting this subpoena. However, the subpoena at issue in *Hill* only holds that EEOC must produce non-privileged documents. It does not address the propriety of deposing EEOC employees, and thus is not applicable in this case.

Although the non-privileged sections of the Commission's investigative files are not generally available as a matter of public information, they are available to the parties in litigation, subject to certain exemptions provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII), and in the Freedom of Information Act ("FOIA"). Indeed, to the extent that documents contained in the Moore file are not protected, the EEOC had already produced them in response to Defendant's previous Section 83 request received by the Commission on February 14, 2014. The Commission responded to Defendant's Section 83 request on March 26, 2014.

### 2. REQUIRING THE TESTIMONY OF COMMISSION EMPLOYEES IN THIS CASE IS AN IMPRUDENT USE OF SCARCE GOVERNMENT RESOURCES

The Commission determination is not reviewed by the District Court in the appellate review sense, but the determination may be a condition precedent to the filing of suit. The determination is not binding on the trier of fact in subsequent litigation. *See e.g. Price v. Rosiek Const. Co*., 509 F.3d 704 (5th Cir. 2007). Therefore, the Commission asserts that testimony in this case would contravene the purposes of the statute. In fact, it would suggest such testimony would routinely be available to parties in litigation and consume substantial portions of limited investigator time. Some possible outcomes from that approach would be charges not regularly being investigated before they reach court and more charges resulting in litigation because they are not resolved by conciliation or appropriate charge counseling.

The approach Defendant urges as appropriate to the Court would turn EEOC's enforcement scheme on its head. Defendant proposes to require Commission employees without limit to be subject to deposition and/or trial in each charge investigated. To require McDuffey or

other EEOC employees to be available for deposition or trial in this case would unreasonably interfere with the EEOC'S ability to carry out its congressionally mandated duty to investigate claims of employment discrimination efficiently and effectively. *See In re EEOC,* 709 F.2d 392, 397-98 (5th Cir. 1983). If litigants in such cases could depose EEOC employees as a matter of course, the Commission would be forced to expend substantial resources testifying about old investigations rather than conducting new ones. *Leyh v. Modicon,* 881 F.Supp. 420 (S.D. Ind. 1995).

As background, in Fiscal Year 2014, the EEOC received over 31,073 Title VII charges based on race nationwide.[7] The EEOC resolved 7.5 percent of these charges through settlement, 4.9 percent through voluntary withdrawal by the employee, and another 4.9 percent though administrative closure. Through these efforts in fiscal year 2014, the EEOC recovered without litigation monetary benefits over $296 million dollars under all statutes it enforces. These numbers speak not only to the EEOC's success in enforcing Title VII, but also demonstrate the EEOC's critical role in preserving judicial resources by resolving disputes before they reach litigation.

The contribution made by Jackson Area Office staff is a significant part of this overall picture. During calendar year 2014, McDuffey supervised a unit consisting of eight (8) investigators who completed investigations in more than 645 charges of discrimination. During the same period the Jackson Area Office accepted more than 1450 new charges for investigation. Of course, the federal courts are the eventual place of decision for charges not resolved before the Commission. According to court records, almost all cases brought under statutes enforced by the Commission are filed with coding under Nature of Suit Number 442. During calendar year

---

[7] All statistics on this page can be viewed at, http http://eeoc.gov/eeoc/statistics/enforcement/race.cfm (last visited March 26, 2015).

12

there were 65 new lawsuits filed in the Northern District with this coding and 152 in the Southern District. The permissible seven (7) hour deposition in only half of these would require approximately 700 hours of time for each EEOC employee deposed, a total of 14 hours in this case alone.

Several courts have noted the importance of conserving limited government resources under similar circumstances. For example, the Eleventh Circuit in *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194 (11th Cir. 1991), discussed the detriment which federal agencies would suffer if the time and efforts of their employees were diverted to the use of private individuals in lawsuits to which the government is not a party. In *Moore,* the court noted that obtaining the deposition of an agency employee "cannot compare to the government's interest in maximizing the use of its limited resources." *Id*. at 1197-98; see also, *Boron Oil Co. v. Downie*. 873 F.2d 67 (4th Cir. 1989) ("If EPA On-Scene Coordinators were routinely permitted or compelled to testify in private civil actions, significant loss of manpower hours would predictably result and agency employees would be drawn from other important agency assignments"); *Reynolds Metals Co. v. Crowther*, 572 F. Supp. 288, 290 (D.Mass. 1982) ("If OSHA employees were routinely permitted to testify in private civil suits, significant loss of manpower hours would predictably result").

Defendant does not contend that the administrative file produced by the Commission requires clarification or contains ambiguous references. Compare *Little v. Auburn University*, 2010 U.S. Dist. Lexis 13491 (M.D. Ala. 2010) (holding that deposition of EEOC Investigator was permissible because Defendant mainly sought to clarify factual information and ambiguous references in the investigative file, such as illegible handwritten notes) with *EEOC v. Pinal County Sheriff's Office*, 714 F. Supp. 2d 1073, 1078 (S.D. Cal. 2010) (information requested

from EEOC about its Letter of Determination was protected from disclosure by deliberative process privilege because defendant failed to show that investigate file documents produced by the Commission needed clarification or were ambiguous).

Here, as in *EEOC v. Pinal County Sheriff's Office*, the Defendant has not shown "why the [investigative file] documents do not answer the questions [they] have concerning the factual basis for the EEOC's probable cause determination." 714 F. Supp. 2d 1073, 1078 (S.D. Cal. 2010). In fact, Defendant has offered no rational other than its belief that McDuffey may have information regarding the events that occurred during the investigation.

This concern of conserving limited government resources is of critical importance to the EEOC. It is one of the nation's smallest agencies, and is currently charged to process and investigate thousands of charges filed with the agency and related state agencies. The Commission serves a vital function of providing charge advice on thousands of inquiries that never become charges or become litigation. Moreover, the volume of charges being filed with the EEOC has increased dramatically over the years. Between 2011 and 2014, the total nationwide new charge filing has fluctuated between 88 and 99 thousand annually.

It is expected that number will continue to rise and, despite achieving some success in reducing its backlog, the Commission's operations have continuously been hampered by budgetary constraints and staffing shortfalls. Every hour that a Commission employee spends away from his or her duties (whether being deposed, reviewing a file in preparation for deposition, or meeting with an attorney) is time that could be spent processing, investigating and addressing the backlog and substantial growth in charge filings. Thus, every manpower hour is precious to the Commission. The inevitable cumulative impact of allowing an EEOC representative to be deposed about specific charges to which the Commission is a non-party, or

on Commission procedures, generally, would severely cripple the EEOC's ability to do its work in a timely fashion.  Thousands of lawsuits are filed each year alleging violations of the statutes the Commission is charged with enforcing.  If the Commission were required to submit its employees to testify in even a small percentage of the cases filed by private individuals, the cumulative loss of manpower hours necessary to comply with requirements of such subpoenas would hamper the Commission's efforts to perform its basic statutory duties.  The ultimate harm would be felt by those individuals who file charges with the Commission and would suffer unnecessary delays in the processing of their cases.

The harm which can be caused to the agency by having its employees routinely subjected to discovery in employment discrimination cases, was summarized in *E.E.O.C. v. Greater Metroplex Interiors, Inc.*, 2009 WL 412934, 2 (N.D.Tex. 2009) quoting *Leyh v. Modicon, Inc.*, 881 F.Supp. 420, 424 - 425 (S.D. Ind. 1995):

> [T] EEOC has obvious and well-founded concerns about having its investigators spend their time testifying about old investigations instead of conducting current investigations.
> * * *
> Despite the generally permissive approach to discovery in the federal courts, the court does not believe that parties to an employment discrimination case should be able to depose EEOC investigators as a matter of course.  Such depositions should not become a routine method to find a short-cut to evidence or to being given pre-packaged cases. . . . While such depositions might save private litigants some time and money, there is a larger public interest here.  The EEOC has plenty of work to do investigating new complaints, and its principal responsibility is to serve the public as a whole, not to work for the benefit of particular litigants.

This admonition about the deposition of EEOC personnel, applies even if the possibility exists that the employee might testify about admissions by the opposing party.  "The possibility that the investigator might testify about admissions by the opposing party would be present in

any case and is not sufficient to outweigh the burden of subjecting the EEOC to depositions of its

investigators as a matter of course." *Leyh*, at 425.[8]

> Therefore, the EEOC resists this litigant's attempts to depose its investigator
> and other employees and officials. Such a deposition would be unduly
> burdensome and oppressive upon the EEOC. Further, to the extent that the
> EEOC's general procedures for handling or reviewing charges are not
> privileged, they are a matter of public record, and can be found in the EEOC's
> Compliance Manual. Therefore, this subpoena should be quashed in its
> entirety.

### 3. THE DEPOSITION SHOULD BE PRECLUDED BECAUSE IT SEEKS THE DISCLOSURE OF PRIVILEGED INFORMATION

Defendant, however, as evidenced by its attempt to notice McDuffey's deposition desires

to go beyond the documents which were produced and to probe into the decisions which were

made by the Commission with regard to the processing and handling of this and other charges of

discrimination. The use of the phrase 'factual matters related to the investigation of Charge No.

843-2012-62607' in the type of testimony commanded, lacks significance.. *U.S. v. Halifax

Hospital Medical Center*, 2012 U.S. Dist. Lexis 114222, *12 (M.D. Fl. 2012). The point of

Defendant's proposed areas of examination is to inquire as to how the EEOC "interpreted and

applied the law and government policies to the facts of this case." *Id*. Therefore, it is likely that

any such inquiry would involve the Commission's legal theories and pre-decisional analysis,

which violates both statutory privileges related to the confidential nature of EEOC files, as well

as the deliberative process or attorney-client privileges.

### a. Deliberative Process Privilege

---

[8] In those instances where an investigator is a witness to an admission, that fact is noted in the administrative file. In such an instance the Commission routinely produces an affidavit of the investigator attesting to the accuracy and authenticity of the written document. However, even when such affidavits are provided, courts have not permitted parties to depose those investigators for the purpose of impeaching the affidavit. *See, Lang v. Kohl's Food Stores Inc*., 186 F.R.D. 534, 79 FEP Cases 19 (W.D. Wis. 1998)(adopting Magistrate Judge's Order quashing deposition of EEOC employees for the purpose of testing the veracity of affidavits).

Traditionally, government deliberations have been protected by a variety of qualified privileges in order to promote efficient and effective decision-making which is fueled by the free-flow of information. *See Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.,* 376 F.3d 1270, 1277–78 (11th Cir.2004) (holding that an agency's audit reports, internal memoranda, notes and work papers were protected by the deliberative process privilege and noting that the purposes of the deliberative process privilege are "to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny" and "to ensure that agencies are not forced to operate in a fish bowl.")

One such privilege, the deliberative process privilege, protects the decision-making process of government agencies in certain circumstances. *EEOC v. Sears, Roebuck & Co.,* 111 F.R.D. 385, 390 (N.D. Ill. 1986). Instead, the Commission appeals to the common law version of the official information privilege protecting against disclosure of materials that would be "injurious to the consultative functions of government...." *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 946, 141 Ct. Cl. 38 (1958), quoted in *National Labor Relations Board v. Sears, Roebuck & Co.* 421 U.S. 132, 149, 95 S.Ct. 1504, 1516, 44 L.Ed. 2d. 29, 47 (1975). The privilege "'rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *Sierra Club v. Kempthorne*, 488 F. Supp. 2d 1188, 1190 (S.D. Ala. 2007), quoting *Dept. of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8-9, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001).

The deliberative process privilege protects staff recommendations or suggestions which reflect the staff member's personal opinions or analysis prepared in order to assist the Commission in arriving at its decision. *Sierra Club v. Kempthorne*, 488 F. Supp. 2d 1188, 1190

(S.D. Ala. 2007), citing *Florida House of Representatives v. United States Department of Commerce*, 961 F.2d 941, 948 (11th Cir. 1992).

And, as the court explained in *U.S. E.E.O.C. v. Windsor Court Hotel, Inc.*, 1999 WL 407610, 1 (E.D.La. 1999), "An EEOC investigator's personal notes and evaluations, as well as interagency communications and critiques, fall within the deliberative process privilege".

During the investigation of Moore's charge, various decisions were made with regard to the assignment, processing, and handling of the investigation. Evidence had to be evaluated and weighed. Judgments had to be made about the direction which the Commission should take on various matters. This inherently involved the "give-and-take of the consultative process", which, as the Fifth Circuit noted, ultimately determines whether information is pre-decisional and therefore privileged. *Skelton v. U.S. Postal Service*, 678 F.2d 35 C.A. Tex 1982). (Purpose of the deliberative process privilege is to protect the decision-making process from the inhibiting effect that disclosure of pre-decisional advisory opinions and recommendations might have on the frank discussion of legal or policy matters in writing.) see also *EEOC v. Pinal County Sheriff's Office*, 714 F. Supp. 2d 1073, 1078 (S.D. Cal. 2010) (Any inquiry into information concerning the EEOC's Letter of Determination itself, "would undoubtedly require revealing information about the EEOC's deliberative process, such as its analysis of the information obtained, its witness credibility evaluations, its evaluation of the evidence, the personal opinions of EEOC representatives, and the decision-making process of the EEOC."). The deliberative process privilege is a privilege recognized by federal courts in federal question cases. *See Soto v. City of Concord,* 162 F.R.D. 603, 612 (N.D.Cal.1995); *Williams v. City of Boston,* 213 F.R.D. 99, 101– 02 (D.Mass.2003). The court finds that there is a common law deliberative process privilege. *See Swartwood v. Cnty. of San Diego,* No. 12CV1665–W BGS, 2013 WL 6670545, at

*4 (S.D.Cal. 2013). "The purpose of the privilege is to protect the decision-making process from the inhibiting effect that disclosure of pre-decisional advisory opinions and recommendations might have on the 'frank discussion of legal or policy matters' in writing." *Skelton v. U.S. Postal Serv.,* 678 F.2d 35, 38 (5th Cir.1982) (discussing the statutorily created deliberative process privilege in the Freedom of Information Act) (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Therefore, to the extent that the Defendant is seeking testimony about the process related to the EEOC's decision to issue a Letter of Determination, the deliberative process privilege protects that information and should be protected from discovery.[9]

Finally, Defendant has provided no evidence or argument to show that the need for disclosure outweighs the government's interest to compel the testimony. *Sierra Club v. Kempthorne*, 488 F. Supp. 2d 1188, 1193 (S.D. Ala 2007); *Walker v. NCNB Nat'l Bank*, 810 F. Supp 11 (D.D.C. 1993); *Bigelow v. District of Columbia*, 122 F.R.D. 111, 113 (D.D.C. 1998). Defendant cannot show that the Commission's participation here is material and relevant to its case.

There are four key factors for considering whether the need for disclosure is outweighed by an agency's interest in protecting them from disclosure: (1) relevance of the evidence; (2) the availability of other evidence; (3) the Government's role in this litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Sierra Club v. Kempthorne*, 488 F. Supp. 2d 1188, 1193 (S.D. Ala 2007), quoting

---

[9] Because Determination letters are issued by Jackson Area Director Wilma Scott, any information sought from them and related to the basis for issuing the Letter may also be subject to the "high government official doctrine." See generally *Walker v. NCNB Nat'l Bank*, 810 F. Supp. 11, 13 (D.D.C 1993) (absent a clear showing of misconduct or wrongdoing to warrant making the inquiries into the reasons for issuance of the Letter [of Determination], defendant could not question high ranking EEOC official regarding the formulation, creation, and drafting of the letter.)

*Federal Trade Commission v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); see also *Walker v. NCNB Nat'l Bank*, 810 F. Supp 11, 13 (D.D.C. 1993) (Four key factors are "(1) the impact disclosure would have on future agency deliberations; (2) the relevance of the evidence requested; (3) the role of the government in litigation; and (3) the accuracy of judicial fact-finding."), citing *In Re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C.C. 1992). In *Walker*, the court faced a fact situation very similar to this one. Ruling on a motion to compel, the court held the deliberative process privilege protected an EEOC official from testifying at deposition as to the Commission's administrative Letter of Determination. *Id*. at 14.

### b.  The Availability of Other Evidence

The Commission has previously produced all non-privileged documents contained in EEOC administrative file Perry Moore, Charge No. 843-2012-62607, pursuant to the Section 83 of the EEOC Compliance Manual. The documents included all of the information gathered by the Commission during its investigation of this charge, including information related to the factual basis for the EEOC's findings and the identity of comparators. Those documents speak for themselves and their production should be sufficient to satisfy the underlying basis for the subpoena.

### c.  The EEOC Deserves Full Protection Under the Privilege Especially Given Its Non-Party Status

The EEOC is not a party to Plaintiff's lawsuit. Therefore, as in *Walker*, "the role of the Commission in this litigation is minimal." *Walker*, F. Supp. at 14. The Commission's administrative process, including issuance of the Letter of Determination, does not subject Defendant to liability and thus further distances the EEOC from the present litigation. *See Id*. ("The EEOC has no direct involvement in the suit with the exception of the instant dispute

regarding [a representative's] deposition."). Consequently, the strength of the EEOC's argument for application of the deliberative process privilege represents a more secure principle given its non-party status.

### d. *Attorney-Client Privilege*

Similarly, to the extent that any Commission employee sought advice from members of the Legal Unit of the Birmingham District Office concerning the handling or investigation of a particular charge, those communications are protected either as deliberative process documents or attorney-client communications.

The attorney-client privilege "encourages clients to disclose information freely to their attorneys, and thus is most consistent with the purpose of the attorney-client privilege". Accordingly, the attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons. With respect to preliminary drafts of documents ultimately intended to be made public, preliminary drafts may be protected by the attorney-client privilege. Preliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, which are  protected by the attorney-client privilege.'" *Muncy v. City of Dallas*, F.Supp.2d, 2001 WL 1795591, (N.D. Tex. 2001).

It exists to "protect not only the giving of professional advice to those who act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981); <u>see also</u> *Motisola Malikha Abdallah v. Coca-Cola*, 2000 U.S. Dist. Lexis 21025 (N.D. Ga. 2000) (communications made by corporate employees to internal corporate counsel in order to secure legal advice are protected under

attorney-client privilege.)  As a governmental agency, the EEOC can assert the privilege in the civil context.  *Ross v. City of Memphis*, 423 F.3d 596, 601-02 (6th Cir. 2005); *EEOC v. Texas Hydraulics, Inc.*, 246 F.R.D. 548 (E.D. Tenn. 2007).

In the instant matter, any communications between Commission representatives who sought advice from EEOC attorneys regarding the investigation or merits of the Moore charge are subject to the attorney-client privilege.  See *EEOC v. Texas Hydraulics, Inc.*, 246 F.R.D. 548 (E.D. Tenn. 2007) (holding that communications between EEOC personnel and EEOC attorneys were protected from disclosure by the attorney-client privilege.); *EEOC v. Hotspur Resorts Nevada, LTD.*, 2012 U.S. Dist. Lexis 88058, 5 n.1 (D. Nev. 2012) ("Confidential communications between EEOC investigators and the EEOC's counsel…are protected from disclosure pursuant to the attorney-client privilege.").  Consequently, this subpoena should be quashed to the extent that it seeks privileged or confidential information or communications shared between EEOC personnel and EEOC counsel.

### C. DEFENDANT WILL NOT BE PREJUDICED BY GRANTING THIS MOTION

Defendant will not be prejudiced by granting the EEOC's motion.  As previously explained, the Commission has produced all non-privileged documents contained in the Moore administrative file pursuant to Defendant's Section 83 file disclosure request.  The administrative file contains all of the information gathered by the Commission during its investigation of EEOC charge number 843-2012-62607.  Production of these documents should be sufficient to satisfy the underlying basis for the subpoena itself.

Additionally, the parties are entitled to a trial *de novo* by the provisions of §706(f) (1) of Title VII of the Civil Rights Act of 1964, *as amended* [42 U.S.C. 2000e, *et seq.*].  Enforcement of the statute by trial *de novo* renders an examination of the investigation, as Defendant appears

to request, unnecessary and inappropriate.  See generally *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) ("'[T]he nature and extent of an EEOC investigation into a discrimination claim in a matter within the discretion of that agency.'"), quoting *EEOC v. Keco Industries, Inc*. 748 F.2d 1097, 1100 (6th Cir. 1984); *EEOC v. St. Anne's Hospital of Chicago, Inc.*, 664 F.2d 128 (7th Cir. 1981) (refusing to look behind the reasonable cause determination of the EEOC); *EEOC v. Chicago Miniature Lamp Works*, 526 F. Supp. 974 (N.D. Ill. 1981) (same), rev'd on other grounds 947 F.2d 292 (7th Cir. 1991).  Consistent with this narrative, it follows that the accuracy of judicial fact-finding would not likely be compromised and Defendant will not be prejudiced by excluding a Commission representative's testimony.

## III.    CONCLUSION

For all of the foregoing reasons, the Commission respectfully requests that the Court issue an order quashing the subpoena compelling the Rule 45 testimony of the Commission or any representative on its behalf.


Respectfully submitted, this 26TH day of March, 2015.


Respectfully submitted,

C. EMANUEL SMITH
Regional Attorney
Mississippi Bar # 7473

MARSHA L. RUCKER
Acting Supervisory Trial Attorney
PA Bar # 90041

*/s/Harriett Johnson*
HARRIETT JOHNSON
Trial Attorney
MS Bar #103149

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
 Dr. A. H. McCoy Federal Building
100 W. Capitol Street, Suite 338
Jackson, Mississippi 39269
Office Phone: (601) 948-8454
Cell Phone: (205) 410-6099
Fax: (601) 948-8401
harriett.johnson@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

**John P. Phillips, Esq.**
Alaniz Schraeder Linker Farris Mayes, L.L.P.
2500 City West Blvd., Suite 1000
Houston, Texas 77042

**Wilbur Colom** (MSB# 6403)
**Scott W. Colom** (MSB#103168)
The Colom Firm, LLC
200 6th Street No., Suite 700
Columbus, MS 39703-0866
Telephone: (601) 327-0903
Facsimile: (601) 329-4832
wil@colom.com
scott@colom.com

*/s/ Harriett Johnson*
Harriett Johnson