IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PERRY MOORE                                                                    PLAINTIFF

v.                                               CIVIL ACTION NO. 1:14-cv-00024-GHD-DAS

GULF STATES MANUFACTURERS, LLC                        DEFENDANT

**MEMORANDUM OPINION DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Presently before the Court is Defendant's motion for summary judgment [120]. Upon due consideration, the Court finds that the motion should be denied.

*A. Factual and Procedural Background*

Plaintiff Perry Moore ("Plaintiff") files this suit alleging race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against his former employer, Defendant Gulf States Manufacturers, LLC ("Defendant" or "Gulf States"), a company in the business of providing steel building products to various customers.[1]

In his complaint, Plaintiff alleges that during his 17 years of employment with Defendant, he received "all positive employment reviews" and was promoted from crane operator to checker/loader and then to coordinator. Pl.'s Compl. [1] ¶¶ 6, 11. Plaintiff further alleges that approximately 10 years after he began working for Defendant, Defendant "hired a [w]hite male loader named Billy Murphy" and that both Plaintiff and Murphy had the same supervisor, Bert Robinson. *Id.* ¶ 7. Plaintiff avers that in March of 2012, "Murphy committed at least three dischargeable acts that violated [Defendant's] [s]afety [p]olicy," but "was not suspended or

---

[1] Plaintiff additionally filed suit against Defendant Gulf States Manufacturers, Inc., which was dismissed as a party on March 17, 2014 pursuant to an unopposed motion to dismiss. *See* Ct.'s Order [9] Granting Unopposed Mot. Dismiss Gulf States Manufacturers, Inc. [6].

1

discharged for any of these violations." *Id.* ¶¶ 8–9. Plaintiff maintains that a few months after Murphy's violations of company safety policy, on June 30, 2012, Plaintiff's fellow employee, Ronnie Wilson, drove a truck and trailer to an area and told Plaintiff to move the truck and trailer. *Id.* ¶ 10. Plaintiff further maintains that while he was pulling the trailer out of the plant the trailer disconnected from the truck and diagonal braces fell onto the yard. *Id.* Plaintiff maintains he did not willfully violate any plant rules and believed he had complied with company policy during the incident, as he had never been told that it was company policy to verify a truck was secure to a trailer after another employee had driven it and presumably secured it. *Id.* A little over a week later, on July 9, 2012, Defendant terminated Plaintiff's employment. Plaintiff filed an EEOC charge for race discrimination based on his discharge. After receiving his right-to-sue letter, Plaintiff initiated this suit, wherein he maintains his discharge was on account of his race.

Defendant has filed an answer and the present motion for summary judgment [120]. Plaintiff has filed a response, and Defendant has filed a reply.[2] The matter is now ripe for review.

### B. *Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* Fed. R. Civ. P. 56(a); *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

[2] Also pending are several motions filed by Plaintiff to strike Defendant's expert reports and opinion testimony [112, 114, 115, & 117], all of which will be ruled on at a later date.

who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

It is axiomatic that in ruling on a motion for summary judgment "[t]he evidence of the nonmovant is to be believed[ ] and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, —— U.S. ——, ——, 134 S. Ct. 1861, 1863, 188 L. Ed. 2d 895 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)); *see, e.g., Ard v. Rushing*, 597 F. App'x 213, 217 (5th Cir. 2014) (per curiam) (quoting *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006) (on summary judgment, " '[w]e view the evidence in the light most favorable to the non-moving party' ")). The Court " 'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.' " *Thomas v. Baldwin*, 595 F. App'x 378, 378 (5th Cir. 2014) (per curiam) (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quotation marks and citation omitted)). "[T]he nonmoving party cannot defeat summary judgment with conclusory

3

allegations, unsubstantiated assertions, or only a scintilla of evidence.' " *Id.* at 380 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Cotton*, 134 S. Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505); *see Stewart v. Guzman*, 555 F. App'x 425, 430 (5th Cir. 2014) (per curiam) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir. 2011) (In ruling on a summary judgment motion, "[w]e neither engage in credibility determinations nor weigh the evidence.")). With the foregoing standard in mind, the Court turns to the issues before it.

## C. *Analysis and Discussion*

Defendant argues that summary judgment should be granted on Plaintiff's race discrimination claims under Section 1981 and Title VII, specifically because (a) Plaintiff has not met his prima facie burden to show that he was qualified for his position or that he was treated less favorably than a similarly situated employee of a different race, and (b) Plaintiff cannot satisfy pretext by rebutting Defendant's proffered reason for Plaintiff's termination: his involvement in a serious safety accident and his actions both prior to and subsequent to the accident.

Section 1981, known as the "equal contracts rights" provision, was enacted shortly after the Civil War and provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 defines "make and enforce contracts" as including "the making, performance, modification, and termination of

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Title VII, unlike Section 1981, is a detailed statutory scheme that "enumerates specific unlawful employment practices" and "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers," including race-based discrimination by employers (§ 2000e-2). *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, \_\_\_ U.S. \_\_\_, 133 S. Ct. 2517, 2522, 2530 (June 25, 2013). "Title VII is central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." *Id.* at 2522. The United States Supreme Court has recognized a "necessary overlap" between Section 1981 and Title VII, holding that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974) (quotation marks omitted)).

Because race discrimination claims brought under Title VII and Section 1981 require the same proof to establish liability, Plaintiff's discrimination claims can be analyzed under the Title VII rubric of analysis. *See Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 283 n.1 (5th Cir. 2015) (per curiam) (citing *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010)). Where a race discrimination claim is based on circumstantial evidence, as Plaintiff's race discrimination is here, the *McDonnell Douglas* burden-shifting framework is used. *See id.* at 284 (citing *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). First, Plaintiff must establish a prima facie case of discrimination. *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005)

5

(citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citations omitted)). If Plaintiff has done so, Defendant bears the burden of setting forth a legitimate, non-discriminatory reason for its decision. *See id.* If Defendant does so, the presumption of discrimination disappears, and Plaintiff must demonstrate a genuine dispute of material fact as to whether Defendant's reason is false and merely pretext for discrimination or that while the employer's reason is true, it is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *See id.*; *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x at 284 (citing *Burrell*, 482 F.3d at 411–12). Based on the foregoing standard, the Court turns to the merits of Plaintiff's race discrimination claims.

*a. Prima Facie Case of Race Discrimination*

Plaintiff claims he was discharged from his employment with Defendant on the basis of disparate treatment on account of his race. To sustain such a claim, a plaintiff must first establish a prima facie case by showing that he "(1) is a member of a protected class, (2) was qualified for the position at issue, (3) was discharged or suffered some adverse employment action by the employer, and (4) . . . was treated less favorably than other similarly situated employees outside the protected group." *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x at 284 (citing *McCoy v. City of Shreveport, La.*, 492 F.3d 551, 556 (5th Cir. 2007)).

It is undisputed that Plaintiff has satisfied the first and third prongs of his prima facie case, in that he is a member of a protected class and was discharged. However, Defendant contends that Plaintiff's prima facie fails on the second and fourth prongs, that is, that Plaintiff has failed to show that he was qualified for the position at issue and treated less favorably than other similarly situated employees outside the protected group. For the reasons stated below, the Court finds that Plaintiff has met his prima facie burden on these two prongs, as well.

Defendant contends that Plaintiff has failed to meet his prima facie burden to show that he was qualified for the position at issue, a loader at Gulf States, because (a) Plaintiff's violations of safety policies demonstrate he was no longer qualified for the position and (b) Plaintiff provided false information on his employment application by stating that he had no prior felony convictions when he actually had a prior felony conviction for sexual battery.

As evidence on the qualification prong, Plaintiff points to his 17-year employment record with Defendant and his deposition testimony and affidavit stating that he had the good-faith belief at the time he applied for the position that the prior criminal conviction was no longer on his criminal record and thus need not be stated on his employment application. Defendant's arguments against Plaintiff's qualifications for his position stemming from performance concerns do not prove a lack of qualifications at the prima facie stage, but instead are more appropriately addressed under the pretext prong of the analysis. *See Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 357 n.1 (5th Cir. 2009) (per curiam) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350–51 (5th Cir. 2007) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988)). Furthermore, the Court finds that Defendant's arguments against Plaintiff's qualifications for his position stemming from any untruth on his employment application are more appropriately addressed under the pretext prong of the analysis. Finally, the fact that Plaintiff was employed with Defendant for 17 years and was promoted to the loader position during that time supports that he was qualified for his position. *See Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 360 (5th Cir. 2005) (per curiam) ("The record . . . reflects [plaintiff's] qualification for the position in question. [Plaintiff] had worked in the RTV department at [defendant] since August, 1999 and was a Lead since January, 2001. During this period, she received several raises, demonstrating some level of confidence on [defendant's] part

7

in [plaintiff's] qualification."). Accordingly, the Court finds that Plaintiff has satisfied his prima facie burden on the qualified prong.

The Court now examines the similarly situated prong. " '[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.' " *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 450 (5th Cir. 2014) (per curiam) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quotation marks omitted)). The "nearly identical" standard is met when "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 259–60. "If a difference between the plaintiff's conduct and that of the allegedly similarly situated employee accounts for the difference in treatment, the employees are not similarly situated for the purposes of the employment discrimination analysis." *Spencer*, 576 F. App'x at 451 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

In support of the similarly situated prong of his case, Plaintiff points to comparator Billy Murphy, a "[w]hite male loader" hired "[a]round 2005 or 2006" who shared supervisors and job responsibilities (though Plaintiff also had the added responsibility of driving the yard truck, a responsibility Plaintiff maintains did not include additional pay). Pl.'s Compl. [1] ¶ 7; Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [130] at 29. Plaintiff maintains that Murphy "committed at least three dischargeable acts that violated [Defendant's] [s]afety [p]olicy," specifically, "dropp[ing] a load of steel rods on the floor from an overhead crane";

8

"mismanag[ing] an operating crane and caus[ing] damage to [Defendant's] property"; and "dropp[ing] a 400[-]pound beam from a trailer that was about 12 feet high which could have killed or caused serious[ ] bodily injuries to him and/or others." Pl.'s Compl. [1] ¶ 8. Plaintiff maintains that Murphy "was not suspended or discharged for any of these violations of [Defendant's] [s]afety [p]olicy." *Id.* ¶ 9. However, Plaintiff maintains that Plaintiff was discharged after "caus[ing] damage to company property" on the single incident at issue in this case. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [130] at 29. Plaintiff further maintains that his actions in the incident at issue create an issue of fact in that

> [Plaintiff] disputes that it was his job to make sure the truck was properly connected to the trailer since [Wilson] had already connected it. He testified that there was no policy that a second yard truck driver had to make sure the previous yard truck driver had properly connected the trailer, especially since this requires more than a visual inspection. . . . [Plaintiff] also testified that it was the loader's responsibility to strap the loads before transportation and pointed to documentation to support this. [Murphy] loaded the June 29, 2012 load[,] so it was his duty to strap them before he told [Plaintiff] to transport the load.

*Id.* at 29–30.

Defendant argues that Plaintiff's violations were more serious and egregious than Murphy's and that Plaintiff refused to take responsibility for his violations, whereas Murphy readily accepted responsibility for his own actions.

Although discrepancies may exist in the conduct by the two separate employees, Plaintiff shows the two employees had essentially the same position, worked under the same supervisors, had similar job duties, and committed safety violations. "[T]he standard is whether the comparators are nearly identical, <u>and not identical</u>." *See Jackson v. Frisco Indep. Sch. Dist.*, --- F.3d ----, 2015 WL 3687803, at *6 (5th Cir. June 15, 2015). Given this standard, the Court finds that Plaintiff has at least made the minimal showing required to substantiate the fourth prong of

his prima facie case. The Court further finds that Defendant's detailed arguments against Plaintiff's similarly situated allegations are better explored under the pretext prong of the analysis. Accordingly, the Court finds that Plaintiff has satisfied his prima facie burden on the similarly situated prong.

The Fifth Circuit has stated that the plaintiff "need only make a very minimal showing" to establish a prima facie case. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). "[T]he requirements for showing a prima facie case are somewhat flexible." *Cooper v. United Parcel Serv., Inc.*, 368 F. App'x 469, 474 (5th Cir. 2010) (per curiam) (citing *McDonnell Douglas*, 411 U.S. at 802 n.13, 93 S. Ct. 1817) ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required . . . is not necessarily applicable to every respect in differing factual situations.")). The Court finds that Plaintiff has met his initial burden on all four prongs of his prima facie case and has raised an inference of intentional discrimination which Defendant must rebut by providing a legitimate and non-discriminatory justification for the adverse employment action. *See Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995).

### b. Legitimate, Non-discriminatory Reason for Adverse Employment Action

The Court now examines whether Defendant has articulated a legitimate justification for the adverse employment action of discharging Plaintiff. Defendant contends that its legitimate, non-discriminatory reason for discharging Plaintiff was that "he willfully disregarded company safety policies and engaged in unprecedented, egregious, and potentially deadly behavior, for which he accepts no personal responsibility"; specifically, "[w]hile moving a fully-loaded 48-foot trailer on June 29, 2012, Plaintiff spilled a load of steel weighing approximately 20 tons off . . . the trailer, then inexplicably situated himself between the spilled steel on the ground and the

unsecured and unstable steel remaining on the damaged, listing trailer" and stated in his deposition that he would not change his behavior if he had things to do over again. Def.'s Mem. Br. Supp. Mot. Summ. J. [121] at 1–3.

Defendant's proffered reason for the adverse employment decision is sufficient to rebut Plaintiff's case on a prima facie level. Thus, the burden shifts back to Plaintiff to show pretext or mixed motives.

### c. *Pretext/Mixed Motives Alternative*

Plaintiff argues that Defendant's proffered reason for his discharge was pretext for race discrimination. Plaintiff may prove Defendant's articulated reason is pretext "in two ways, either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x at 285 (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991) (quotation marks omitted)). "In the context of a summary judgment proceeding, the question is not whether the plaintiff <u>proves</u> pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Id.* (quoting *Amburgey*, 936 F.2d at 813) (quotation marks and citations omitted). A plaintiff bringing a race discrimination claim

> need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act. . . . It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.

*Nassar*, 133 S. Ct. at 2522–2523 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

11

Plaintiff argues that Defendant's proffered reason is false, because Defendant treated Plaintiff and Murphy differently under nearly identically circumstances and tried to cover up the disparate treatment. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [130] at 33. Specifically, Plaintiff maintains that both Plaintiff and Murphy were loaders with the same job responsibilities and the same supervisors. Plaintiff further maintains that in March 2012 Murphy had two incidents where he failed to follow company practice in "chocking" the steel products in the sling, which caused the steel products to fall and potentially harm him and other employees, and another incident where he was careless with a crane and caused a beam to fall to the ground. However, Plaintiff maintains that he only had one incident, the one at issue in this case. Plaintiff argues that at worst Plaintiff and Murphy both failed to follow company practices during the aforementioned incidents—but Plaintiff was terminated and Murphy was not disciplined.

Plaintiff maintains that in the incident at issue "for all visual purposes the truck and the trailer were connected before [Plaintiff] entered the truck because [Wilson] had already driven the truck under the trailer and attached the airlines" and "[t]he only way [Plaintiff] could have discovered [Wilson] had not properly connected the fifth wheel is if he had driven the car to test it himself." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [130] at 23–24. Plaintiff further states that "[d]uring [17] years, and countless instances where he drove a yard truck connected by another driver, [Plaintiff] did not know it was [Defendant's] practice to make sure another driver had properly connected the fifth wheel" and thus, "[t]his was not a case of [Plaintiff] purposefully violating company policies and practices after [17] years. At wors[t], it was a simple mistake." Id. at 24.

Plaintiff further argues that Defendant has excused all of Murphy's incidents and have "tried to cover up the disparate treatment between [Plaintiff] and [Murphy]," including "hid[ing

Murphy's] documents," information, and "admittedly l[ying] to the EEOC about one of [Murphy's] incidents." *Id.* Plaintiff maintains that as further evidence of pretext, in Defendant's July 25, 2012 letter to the EEOC in response to Plaintiff's race discrimination charge, Defendant "inaccurately and unfairly describe[d] [Plaintiff's] incident" by accusing Plaintiff of "willful disobedience and indicative of reckless judgment" and of "intentionally causing the spill"— when Defendant's description of Plaintiff's actions in his June 29 incident investigation report and warning consultation were that of a mistake. *Id.* at 34.

Defendant argues that "Plaintiff's contention that Defendant's non-discriminatory reasons for termination cannot be believed because he was not at fault for the accident, and his African-American coworker was, is untenable and does not create a material issue of fact regarding pretext." Def.'s Mem. Br. Supp. Mot. Summ. J. [121] at 25. Defendant further argues that Plaintiff cannot identify any employee who was similarly situated to him and received more favorable treatment. Defendant attempts to distinguish the treatment of Plaintiff and Murphy by stating the following:

> First, Plaintiff ignored established safety procedures and practices when he pulled the yard truck and fully-loaded trailer from Bay 3 without checking to determine whether the trailer was properly connected and properly strapped. Failing to follow the strapping procedure was especially significant because the procedure existed as a result of Plaintiff's previous load-spilling incident. [Murphy], on the other hand, never ignored established company practice. In fact, on at least two occasions Gulf States reviewed and changed insufficient company practice as a result of the incident (just as they did for at least two of Plaintiff's incidents).
>
> Next, Plaintiff exacerbated the seriousness of his accident by willfully entering the accident zone before it had been secured, placing himself in serious danger of death or significant injury. At no point did [Murphy] (or anyone else at Gulf States) ever commit such an infraction. This egregious violation of safety protocol

> alone separates Plaintiff's final incident from all others and "account[s] for" the difference in treatment he received for it.
>
> Finally, Plaintiff refused to accept responsibility for his actions and did not demonstrate that he would learn from his accident. Indeed, despite potentially getting himself seriously injured or killed, Plaintiff accepted no responsibility and testified that he would not do anything different. [Murphy], on the other hand, has at all times accepted responsibility and demonstrated that he is coachable and will learn from mistakes.

*Id.* at 21–22. Defendant further cites to General Manager Danny Coggins' affidavit, wherein Coggins states:

> After reviewing all of the facts and statements [surrounding the incident at issue], as well as considering what I personally observed at the scene of the accident, I determined that [Plaintiff] acted egregiously by placing himself in great danger after the accident. I also determined that Plaintiff's actions, along with his failure to accept responsibility for his actions, demonstrated that he had not acknowledged his responsibility for meeting our required safety expectations. Thus, I decided that [Plaintiff] would be terminated.

Coggins Aff. [120-2] ¶ 20.

Defendant further maintains that Plaintiff was not qualified for the position at issue, because during Plaintiff's 17-year employment with Defendant, he had "several safety accidents for which he was either not disciplined or suspended," leading up to incident at issue, and that these acts together constituted "egregiously unsafe actions" that "rendered him unqualified for continued employment." Def.'s Mem. Br. Supp. Mot. Summ. J. [121] at 1–3.

Defendant also argues that Plaintiff was not qualified for the position at issue, because "Plaintiff provided false information on his employment application" by "den[ying] being convicted of a crime," when he later "admitted in his deposition that he had previously been convicted of a felony (sexual battery)," and, thus, "did not possess a necessary qualification for his job in the first place." *Id.* at 19–20 (citing Pl.'s Dep. [120-1] at 252–55). Defendant

maintains that "[o]ne of the qualifications necessary for employment at Gulf States is honesty. If Gulf States had known that Plaintiff had falsified his application, Plaintiff would have been unqualified and Gulf States would have terminated his employment." *Id.* at 20. (citing Coggins Aff. [120-2] ¶ 32). Defendant maintains that the affidavit Plaintiff attaches to his response is "self-serving" and involves a citation "to an alleged conversation with a former[] Gulf States employee, who was never disclosed, who has not worked at the company for years, and whose memory cannot be tested." *Id.* at 4.

Plaintiff argues in response that his actions during the incident at issue do not demonstrate that he no longer has the ability to work safely—which Plaintiff maintains presents a genuine dispute of fact for the jury to resolve. Plaintiff further argues that Plaintiff "worked as a loader for [Defendant] for more than [17] years and has all the objective qualifications for the job." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [130] at 27. Plaintiff further argues in response that although he "admits he provided false information on the application, he also swears [Defendant] had knowledge of the conviction when he was hired" and that Plaintiff "notified [Defendant] of the conviction prior to his termination in 2011." *Id.* at 28. Plaintiff maintains that case law shows that an employee should not be barred from relief when an employer discovers evidence of wrongdoing after the termination. Plaintiff attaches to his response his own affidavit wherein he states: "I marked that I had not been convicted on the application because I thought the conviction was removed from my record after I completed boot-camp since I was not twenty[-]one years old at the time of the conviction. Also, when I discussed my application and the conviction with Ernest Brown at the Human Resources Department at Gulf States he told [me] to mark no on the application." Pl.'s Aff. [129-1] ¶ 5.

The Court finds that the above arguments demonstrate that Plaintiff has raised genuine disputes of material fact with respect to pretext and/or mixed motives that make this case appropriate for trial.

*D. Conclusion*

In sum, Defendant's motion for summary judgment [120] is DENIED. This case shall proceed to trial.

A separate order in accordance with this opinion shall issue this day.

THIS, the ___ day of July, 2014.

                                                                 SENIOR U.S. DISTRICT JUDGE